IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

DENNIS JONES,

      Plaintiff,

v.                                   No. 15-1142

RICKY MONTGOMERY,

      Defendant.

_____

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT
_____

In this action filed on June 4, 2015, Plaintiff, Dennis Jones, seeks damages pursuant to

Title 42, section 1983 of the United States Code from Defendant, Ricky Montgomery, an officer

of the Lexington Police Department, for violations of the Fourth and Fourteenth Amendments to

the United States Constitution, and for claims under Tennessee common law. (Docket Entry

"D.E." 1.) Before the Court is Defendant's August 11, 2015 motion for summary judgment,

requesting the Court grant qualified immunity and/or summary judgment due to a lack of

genuine issues of material fact in accordance with Federal Rule of Civil Procedure 56. (D.E.

15.)[1]

---

[1] On October 20, 2015, well after the prescribed time, this Court issued an order giving
Plaintiff eleven days to show cause why the case should not be dismissed for failure to respond
to Defendant's motion for summary judgment. (D.E. 20.) Plaintiff's counsel responded, stating
that he had "totally overlooked" the email notice of Defendant's motion. The Court will not
dismiss the case on this ground, but cautions Plaintiff that any other unexcused failures to meet

*I. FACTS ALLEGED*

Jones alleges the following facts. On June 2, 2014, a Henderson County grand jury returned sealed indictments against Plaintiff. Two days later, Montgomery and Investigator Stephen Clark of the Henderson County Sheriff's Department undertook to arrest Jones, pursuant to the indictments. Montgomery and Clark went to Plaintiff's residence, knocked on the door, and upon Jones answering, informed him that he was under arrest. He was then offered paperwork, which explained the reasons for the arrest. Plaintiff asked Clark to allow him to smoke a cigarette while he read the papers. Clark acquiesced. Plaintiff avers that while he was looking over the indictments, Defendant slapped the cigarette from his hand, pushed him violently against his mobile home, and presumably evinced intent to handcuff Jones. Jones requested that, because he had recently undergone fusion surgery on his right wrist, he not be handcuffed tightly.[2] Furthermore, Jones asked to be handcuffed in front of his body and not behind his back. In response to this request, Defendant stated that he "didn't give a damn" about Plaintiff's wrist and handcuffed him tightly behind his back.

Jones complained about the pain caused by the handcuffs first to Montgomery and then to Officer Tracy Taylor, who arrived on the scene shortly after the arrest. Taylor asked how he was doing, and he responded that he was in pain from the handcuffs and the previous surgery. Taylor then replaced Montgomery's handcuffs with her own, but handcuffed Plaintiff's hands in front of

_____

deadlines will result in the case's dismissal. Accordingly, Defendant's objection to the late-filed response (D.E. 23) is OVERRULED.

[2] Jones maintains that both Montgomery and Clark knew about his wrist surgery as they had interviewed Jones's mother a month prior, seen him with a cast on his right wrist, and, upon inquiry, learned that Plaintiff had recently undergone fusion surgery.

his body and loosely enough so as to not cause pain.  Taylor transported Jones to the Henderson County Jail, where he repeated his complaint of wrist pain.

Jones asserts that the handcuffs were tight enough to cause an extreme amount of pain, swelling, and decreased mobility.  These injuries caused him to incur medical bills.

Jones brings two claims against Montgomery:[3]  1) violation of 42 U.S.C. § 1983 for use of excessive force in violation of the Fourth Amendment of the United States Constitution, and 2) the Tennessee common law torts of assault and battery.  Montgomery moves for summary judgment, arguing that he is entitled to qualified immunity and Jones has not raised a genuine issue of material fact.  The Court will address each argument in turn.

## II. STANDARD OF REVIEW

The Court must inquire whether the movant is entitled to summary judgment as a matter of law because no genuine issues of material fact remain.  Under Rule 56 of the Federal Rules of

---

[3] The complaint is ambiguous in at least two important respects (D.E. 1):  1) page one states an intention to bring claims pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the Fourth and Fourteenth Amendments to the United States Constitution.  Plaintiff, however, limits his claims to violations under the Fourth Amendment.  Thus, it could be inferred that he has abandoned the Fourteenth Amendment argument.  *See infra* note 4 and accompanying text.  Nevertheless, the Court will address all possible Fourteenth Amendment claims.  2) Jones states that he is suing the Defendant "in his individual capacity as an employee of the City of Lexington, Tennessee."  This statement is unclear as to whether Plaintiff intends to bring suit against Montgomery in his individual or official capacity.  The parties, however, appear to assume that the suit is one against Defendant in his individual capacity.  Plaintiff requests punitive damages—a remedy available only to prevailing plaintiffs on individual capacity claims. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *McCrary v. Ohio Dep't of Human Servs.*, No. 99-3597, 2000 WL 1140750, at *3 (6th Cir. Aug. 8, 2000).  In addition, Defendant asserts the defense of qualified immunity—a defense only available in individual capacity cases. *See Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009).  Nothing in the pleadings indicates that Jones intended to bring both official and individual capacity claims.  Accordingly, the Court is convinced that these claims are against Montgomery in his individual capacity, not in his official capacity.

Civil Procedure, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013) (quoting *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 551 (6th Cir. 2002)). A court's function at the summary judgment stage is not to "weigh the evidence and determine the truth of the matter"; rather, it is "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 748 (6th Cir. 2012) ("Credibility determinations . . . and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (quoting *Anderson*, 477 U.S. at 255)).

The moving party "has the initial burden of showing the absence of a genuine dispute as to a material fact." *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 520 (6th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the motion is properly supported, "the opposing party must go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008). A court must grant summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). Finally, although a court does not weigh the evidence at this stage, it "must view all evidence and draw any reasonable inferences therefrom in favor of the nonmoving party."

*Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 426 (6th Cir. 2014) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "If . . . the defendant disputes the plaintiff's version of the story, the defendant must nonetheless be willing to concede the most favorable view of the facts to the plaintiff . . . ." *Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009); (quoting *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998)).

Thus, in this case, Montgomery bears the burden of showing the absence of a genuine issue of material fact, and the Court must view all evidence in the light most favorable to Jones.

## II. QUALIFIED IMMUNITY

Defendant also insists that he is entitled to qualified immunity. This is partially a threshold issue, because if he is indeed entitled to qualified immunity, the Court need not inquire as to whether any genuine issue of material fact exists under Rule 56 as to the federal claims. *Morrison*, 583 F.3d at 400. Qualified immunity shields individual government officials "performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Feathers v. Aey*, 319 F.3d 843, 847 (6th Cir. 2003)); *see also Essex v. Cty. of Livingston*, 518 F. App'x 351, 356 (6th Cir. 2013). Qualified immunity is a defense both to liability and to the suit itself, *Jones v. Sandusky Cty., Ohio*, 541 F. App'x 653, 660 (6th Cir. 2013), and offers "an entitlement not to stand trial or face the other burdens of litigation," *Morrison*, 583 F.3d at 400 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The doctrine "seeks to prevent government officials, such as police officers, from being held

liable for reasonable mistakes, including mistakes of law, fact, or mixed questions of law and fact." *Jones*, 541 F. App'x at 660.

Qualified immunity is determined by courts examining whether an officer's "actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 395-96 (1989); *see also Griffith v. Coburn*, 473 F.3d 650, 656 (6th Cir. 2007). Furthermore, "[a] defendant enjoys qualified immunity on summary judgment unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Morrison*, 583 F.3d at 400; *see also Saucier v. Katz*, 533 U.S. 194, 202 (2001); *Benison v. Ross*, 765 F.3d 649, 664 (6th Cir.), *reh'g & suggestion for reh'g en banc denied*, 771 F.3d 331 (6th Cir. 2014).

Thus, how a right is defined assumes utmost importance. A right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Morrison*, 583 U.S. at 400 (quoting *Anderson v. Creighton*, 483 U.S. 635 (1987)). "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* The United States Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S.Ct. 305, 305 (2015) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Instead, "[t]he dispositive question is whether the violative nature of particular conduct is clearly established." *Id.* Moreover, the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (citing *Brosseau v. Haugen*, 543 U.S. 194, 198

(2004); *Saucier*, 533 U.S. at 201). This requirement "balances [] the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Of particular importance in this case, "[t]he issue of whether qualified immunity is applicable to an official's actions is a question of law. However, where the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004). Where, as they do here, the "parties dispute virtually all of the essential facts surrounding the excessive force claim, and the evidence proffered by the nonmoving party would support a conclusion that excessive force was used, neither the defendant['s] qualified-immunity arguments nor [his] arguments concerning liability may be resolved on summary judgment." *See Giannola v. Peppler*, No. 96-2467, 1998 WL 96557, at *3 (6th Cir. Feb. 23, 1998) (quoting *Jackson v. Hoylman*, 933 F.2d 401, 403 (6th Cir. 1991)).

## A. § 1983 GENERALLY

Section 1983 provides a private right of action against any person who subjects "any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights[ or] privileges . . . secured by the Constitution and laws[.]" 42 U.S.C. § 1983; *Rehberg v. Paulk*, 132 S. Ct. 1497, 1501 (2012). The statute "creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)). A plaintiff suing under the statute must demonstrate the denial of a constitutional right

caused by a defendant acting under color of state law.  *Carl v. Muskegon Cty.*, 763 F.3d 592, 595 (6th Cir. 2014).

## B. FOURTH AMENDMENT CLAIMS – EXCESSIVE FORCE

Jones alleges that Montgomery violated his constitutional right to be free from excessive force.  The Fourth Amendment's unreasonable seizure jurisprudence must be used when analyzing such claims.  *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001).  The Sixth Circuit has stated,

> whether an officer has exerted excessive force during the course of seizure is determined under an "objective reasonableness" standard.  This entails balanc[ing] the consequences to the individual against the government's interests in effecting the seizure.  The assessment involves a fact-specific inquiry based on the totality of the circumstances that pay[s] particular attention to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.  The Court should judge the lawfulness of the conduct from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.

*Morrison*, 583 F.3d at 401 (citations omitted) (quoting *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002); *Kostrzewa*, 247 F.3d at 639).

In deciding whether qualified immunity applies to this case, the Court must assess the event in individual segments to determine the reasonableness of the police officer's conduct as to each action.  *Phelps v. Coy*, 286 F.3d 295 (6th Cir. 2002).  Thus, the Court must make separate qualified immunity determinations for each instance of excessive force alleged: a) slapping Defendant's cigarette out of his hand after an officer had told him that he could smoke while waiting for the transfer van; b) pushing Defendant against the wall of the trailer while arresting him; and c) causing Defendant injury by handcuffing him too tightly.

1. Slapping

The Sixth Circuit has held that, in many instances, slapping can be a gratuitous use of force. *Lucier v. City of Ecorse*, 601 F. App'x 372, 379 (6th Cir. 2015). Unlike other uses of force, it is less likely to serve the purposes of law enforcement officers and, thus, more likely to be an example of excessive force. *See id.* ("Viewing the facts in the light most favorable to [p]laintiff, the district court correctly concluded that, at the time of [p]laintiff's arrest, his right to be free from 'such acts of gratuitous force' [i.e. slapping] was clearly established."); *Pigram v. Chaudoin*, 199 F. App'x 509, 513 (6th Cir. 2006) ("In contrast, a slap to the face of a handcuffed suspect—even a verbally unruly suspect—is not a reasonable means of achieving anything more than perhaps further antagonizing or humiliating the suspect."); *Carico v. Benton, Ireland & Stovall*, 68 F. App'x 632, 637 (6th Cir. 2003) (noting that the plaintiff could "clearly claim excessive force against [the officer] for the slap to the face"). Thus, it is well established in this Circuit that slapping can be an example of excessive force.

The Defendant states in his motion for summary judgement that Jones was indicted for six counts of sale and delivery of Oxycodone. This is not a violent crime, and no allegations have been made that Jones had been violent either during or prior to the arrest, that he was a danger to the officers, or that he was resisting arrest. The facts of this incident are disputed, however, and the parties vary drastically in their accounts. Defendant does not attempt to show why the slap was a reasonable use of force. Instead, he disputes that it happened at all, and the legal question of qualified immunity turns on whose version of the facts one accepts. *See Pouillon v. City of Owosso*, 206 F.3d 711, 715 (6th Cir. 2000). Viewing the facts in the light most favorable to the Plaintiff, a reasonable factfinder could find that Montgomery slapped Jones

and that this was an example of unconstitutional excessive force. Accordingly, qualified immunity is DENIED on this issue.

2. Pushing

Pushing a suspect against a wall or other object has likewise been held to be an established example of excessive force. Although "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment," *Alkhateeb v. Charter Twp. of Waterford*, 190 F. App'x 443, 449 (6th Cir. 2006) (quoting *Graham*, 490 U.S. at 396), Courts inquire into the specific facts of the case and determine whether the push was reasonable within the context. "The question whether force is excessive turns on the objective reasonableness of the officer's conduct under the circumstances." *Id.* Particularly, when a suspect is fleeing or resisting arrest, courts have upheld the rights of officers to detain such a suspect with physical force. *See Goodrich v. Everett*, 193 F. App'x 551, 557 (6th Cir. 2006) (holding the physical tackling of plaintiff, a suspected violent criminal, in order to prevent escape is not an excessive use of force).

However, violently shoving a defendant against a wall or other such structure while arresting him has consistently been held by the Sixth Circuit to be an unlawful use of force, absent circumstances such as flight, general unruliness, or danger on the part of the arrestee. *See, e.g.*, *Carpenter v. Bowling*, 276 F. App'x 423, 426-28 (6th Cir. 2008) (denying qualified immunity for officer who threw suspect against van despite fact that suspect did not resist arrest); *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 171 (6th Cir. 2004) (denying qualified immunity for officers who threw Plaintiff against a wall and knocked her face into a display case while arresting her); *Burden v. Carroll*, 108 F. App'x 291, 293-94 (6th Cir. 2004) (denying

qualified immunity for officer who pushed belligerent suspect against brick wall after suspect had reportedly threatened someone); *cf. Miller v. Sanilac Cty.*, 606 F.3d 240, 257 (6th Cir. 2010) (granting qualified immunity to officer who pushed plaintiff because no allegation had been made that the shove was violent, malicious, or gratuitous); *Lockett v. Donnellon*, 38 F. App'x 289, 291-92 (6th Cir. 2002) (finding no excessive force when officers pushed and pulled plaintiff into police car in a rough manner where suspect was uncooperative and verbally abusive).

In this case, Jones has alleged that Montgomery "pushed him violently against Plaintiff's mobile home," in preparation for handcuffing him. Defendant has not offered any context or explanation for why this happened but instead disputes its occurrence. Indeed, Defendant has not alleged that Jones was hostile, abusive, or combative. The only evidence offered on this matter is Plaintiff's undisputed account that he was never "rude, hostile, or threatening, either verbally or physical." (D.E. 1 ¶ 17.) Again, this question turns on whose version of the facts one accepts. Viewing the facts in the light most favorable to the Plaintiff, a reasonable juror could find that Montgomery violently pushed Jones and that this was an example of unconstitutional excessive force. Accordingly, qualified immunity is DENIED on this issue.

3. Handcuffing

In *Burchett v. Kiefer*, the Sixth Circuit stated,

> The tightness of the handcuffs themselves causes greater concern. The right to be free from excessively forceful handcuffing is a clearly established right for qualified immunity purposes, and applying handcuffs [too] tightly . . . raises concerns of excessive force. Our precedents allow the plaintiff to get to a jury upon a showing that officers handcuffed the plaintiff excessively and unnecessarily tightly and ignored the plaintiff's pleas that the handcuffs were too tight.

310 F.3d at 944-45 (citations omitted) (quoting *Kostrzewa*, 247 F.3d at 641) (citing *Martin v. Heideman*, 106 F.3d 1308, 1310, 1313 (6th Cir. 1997)); *see also Meadows v. Thomas*, 117 F. App'x 397, 404 (6th Cir. 2004). The court in *Meadows* articulated a two-prong test, based on *Burchett*, for establishing a viable Fourth Amendment claims for excessively forceful handcuffing. In order to satisfy the test, a plaintiff must,

> (1) allege that he complained to the officers that the handcuffs were too tight (or that there is evidence to infer that the officers should have known that the handcuffs were too tight); and (2) as a result of being left in handcuffs that were applied too tightly, he incurs injury to his wrists.

*Meadows*, 117 F. App'x at 405. Here, Plaintiff claims that Montgomery handcuffed him too tightly. He maintains that he: 1) asked Defendant specifically not to cuff him tightly; 2) complained to Defendant once the handcuffs were in place; 3) complained to Taylor when she arrived to transport him; and 4) complained to personnel when he arrived at the police station. Moreover, he alleges he incurred injury as a result, included swelling, pain, and lack of mobility sufficient to incur medical bills. Again, Montgomery offers no explanation other than to say that he was not the officer who cuffed Jones. Clark, he insists, was the one who cuffed him, and Clark states that he cuffed Jones in front of his body and not tightly. Yet again, this is a dispute over whose account is to be accepted. Viewing the facts in the light most favorable to the Plaintiff, a reasonable factfinder could find that Montgomery handcuffed Jones too tightly and that this was an example of unconstitutional excessive force. Accordingly, qualified immunity is DENIED on this issue.

## III. SUMMARY JUDGMENT

## A. VERIFIED COMPLAINTS ON SUMMARY JUDGMENT

Montgomery argues that Plaintiff's notarized complaint does not meet the personal knowledge requirement of Rule 56, and, thus, no genuine issue of material fact exists. However, this case does involve a factual dispute: Jones alleges that Montgomery committed the alleged violations, while Defendant maintains that the events alleged never occurred, but if they did, he did not commit them. (D.E. 23 at 2.)[4]

For statements to be considered on a motion for summary judgment under Rule 56, they must be based on personal knowledge. Fed. R. Civ. P. 56(c)(4). Defendant alleges that Plaintiff's notarized complaint (D.E. 1) and subsequent declaration (D.E. 21-2) do not meet this standard. Montgomery cites *Automatic Radio Mfg. Co. v. Hazeltine Research*, 339 U.S. 827, 831 (1950); *Totman v. Louisville Jefferson City Metro Gov't*, 391 F. App'x 454, 464 (6th Cir. 2010); and *Abdelkhaleq v. Precision Door of Akron*, 653 F. Supp. 2d 773, 787 (N.D. Ohio 2009), for the proposition that statements made according to the declarant's "best knowledge and belief" do not satisfy Rule 56's personal knowledge requirement.

All of the cases cited, however, are distinguishable from the instant case. In all three, the plaintiffs offered declarations that, in certain parts, were based *solely* on their belief and not personal knowledge. *See Hazeltine*, 339 U.S. at 831 (stating summarily that "the affidavit in

---

[4] The Court notes that on November 19, 2015, Plaintiff filed the affidavit of Stephen Justice, stating that he had witnessed the arrest that is the subject to this lawsuit. (D.E. 27.) Defendant objected to this filing, as it was untimely. (D.E. 28.) At this point in the proceedings, the Court neither weighs the evidence nor inquires into the truth of the allegations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, its role is to determine whether there is a genuine issue for trial. *Id.* In this analysis, the effect of the late-filed affidavit is slight at best. Accordingly, Defendant's objection is OVERRULED.

support thereof was made upon information and belief and the relevant portion, at least, does not comply with Rule 56(e) of the Federal Rules of Civil Procedure."); *Totman*, 391 F. App'x at 464 (finding the pleadings to extend beyond the plaintiff's personal knowledge and, thus, failing Rule 56(e) personal knowledge requirement); *Abdelkhaleq*, 653 F. Supp. 2d at 786 (finding statements such as, "I have experienced first hand that [my wife] is an habitual liar and her recollection of events concerning [Defendant] cannot be trusted," to be based on declarant's belief, and, thus, not sufficient to raise a genuine issue of material fact).

Furthermore, the Sixth Circuit has held that a "verified complaint . . . carries the same weight as would an affidavit for the purposes of summary judgment." *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008); *see also Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (explaining that where a party files a verified complaint, the allegations contained therein "have the same force and effect as an affidavit for purposes of responding to a motion for summary judgment"); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992) (concluding that a prisoner's signed complaint with a statement declaring the truth of the allegations under penalty of perjury was sufficient to place controverted facts into issue).

In this case, Jones's complaint was verified with the standard notary language: "The Plaintiff in the foregoing Complaint personally appeared before me, the undersigned authority, and on his oath stated that the facts and matters set forth in his foregoing Complaint are true, to the best of his knowledge, information and belief." (D.E. 1 at 7.) This is boilerplate language, however. The allegations in the complaint are of a nature that could only be made based on personal knowledge. They are not statements of belief, but instead of events that allegedly happened to the declarant.

Moreover, even if the verified complaint was not sufficient to satisfy the requirement, Jones subsequently filed a declaration under penalty of perjury, explicitly alleging personal knowledge. (D.E. 21-2); *see* 28 U.S.C. § 1746 (2015) (stating that when a person is required to provide evidence or proof, an unsworn statement made under penalty of perjury is to be given the same force and effect as a sworn declaration, as long as the statement substantially contains the following language: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.") Plaintiff's statement contains the prescribed language.

On this point, the Court is unmoved by Defendant's recrimination that Jones did not capitulate in light of Clark's declaration contradicting the Plaintiff's version of events and instead chose to "stick to his story." (D.E. 24 at 3.) Moreover, it would appear that Defendant concedes that summary judgment is not appropriate at this juncture: "If this were a mere dispute between Jones and Montgomery as to what Montgomery did or did not do, a reasonable jury could find in favor of Jones." (*Id.* at 2.) In fact, this is a factual dispute between the Plaintiff and Defendant over what the Defendant did or did not do, and Plaintiff has raised a genuine issue of material fact. Accordingly, summary judgment is DENIED on this ground.

## B. FOURTEENTH AMENDMENT CLAIM

Plaintiff also avers that Defendant's actions violated the Fourteenth Amendment. Montgomery requests summary judgment as to this claim on the grounds that the Fourth Amendment creates the applicable right at issue in this case, and, "where a particular constitutional amendment provides an 'explicit source of constitutional protection,' the courts will apply that amendment, and not the Fourteenth Amendment's substantive due process

clause.'" (D.E. 15-1) (citing *Graham*, 490 U.S. at 395).[5] The Fourteenth Amendment Due Process Clause prohibits state and local governments from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. The clause contains both procedural and substantive guarantees. *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 1635 (2013). Procedural due process generally provides that "government action depriving a person of life, liberty, or property . . . [, even that which survives substantive due process scrutiny,] must . . . be implemented in a fair manner." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see also EJS Props.*, 698 F.3d at 855. Substantive due process, on the other hand, "prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *Salerno*, 481 U.S. at 746) (alterations omitted). The facts of this case, in theory, would invoke the latter.

Substantive due process protects against "governmental power . . . being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v.*

---

[5] In his response to Defendant's motion for summary judgment, Jones does not speak in any way to Defendant's assertion that the Fourteenth Amendment is inapplicable. Thus, Plaintiff can be said to have abandoned this argument. The Sixth Circuit's jurisprudence on abandonment of claims is clear: "a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (citing *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment)); *Clark v. City of Dublin*, 178 F. App'x 522, 524-25 (6th Cir. 2006) (recognizing that the failure to respond properly to motion for summary judgment arguments constitutes abandonment of a claim)).

*Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)); *see also Epperson v. City of Humboldt, Tenn.*, No. 15-1074, 2015 WL 6440740, at *8 (W.D. Tenn. Oct. 21, 2015). Courts must, however, "carefully scrutinize so-called substantive due process claims brought under § 1983 because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Upsher v. Grosse Pointe Pub. Sch. Sys.*, 285 F.3d 448, 452 (6th Cir. 2002) (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992)). Therefore, when another provision of the Constitution "provides an explicit textual source" for protection against the alleged rights violation, it "must be the guide for analyzing [the] claims" instead of the "more generalized notion of 'substantive due process' "embodied in the Fourteenth Amendment. *Graham*, 490 U.S. at 395. When such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir.) (per curiam), *cert. denied*, 134 S. Ct. 341 (2013).

Generally speaking, the Due Process Clause "confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 196 (1989). The purpose of the Due Process Clause is "to protect the people from the State, not to ensure that the State protect[s] them from each other." *Id.* In *DeShaney*, a young boy who had been beaten and permanently injured by his father brought a due process claim against municipal officials for failing to remove him from his father's home after they had reason to believe he was being abused. *Id.* at 192-94. The United States Supreme Court declined to impose liability, finding that "[w]hile the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their

creation, nor did it do anything to render him any more vulnerable to them." *Id.* at 201. This statement has led the Sixth Circuit, as well as others, to recognize an exception to the general rule for "state-created dangers." *See Jasinski v. Tyler*, 729 F.3d 531, 538 (6th Cir. 2013). In this Circuit, a plaintiff may bring a state-created danger claim by demonstrating

> (1) an affirmative act by the State that either created or increased the risk that the plaintiff would be exposed to private acts of violence; (2) a special danger to the plaintiff created by state action, as distinguished from a risk that affects the public at large; and (3) the requisite state culpability to establish a substantive due process violation.

*Id.* at 538-39 (quoting *Schroder v. City of Fort Thomas*, 412 F.3d 724, 728 (6th Cir. 2005)).

The complaint in this case, as noted above, alleges only that Jones was involved in an incident in which he was detained, arrested, and physically injured by Defendant. Plaintiff has not alleged that the officer placed him at risk of a violent act by a third party. Nor is there an allegation of a third party being present. Accordingly, the Plaintiff has failed to properly allege a state-created danger claim. *See Camp v. Knox Cty., Tenn.*, No. 3:14-CV-257-PLR-HBG, 2015 WL 461642, at *4 (E.D. Tenn. Feb. 3, 2015) (where plaintiffs' state-created danger claim lacked allegations that defendants placed Camp at risk of an act of violence by a third party or that there was even a third party present, Fourteenth Amendment claim was dismissed; the proper analysis of the plaintiff's claim was the Fourth Amendment's reasonableness standard).

A second exception, the "custody" or "special relationship" exception, has also been recognized by the Sixth Circuit. *See Jahn v. Farnsworth*, 617 F. App'x 453, 463 (6th Cir. June 29, 2015); *Cutlip v. City of Toledo*, 488 F. App'x 107, 112 n.3 (6th Cir. 2012); *Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005). Arising from *DeShaney*'s conclusion,

> when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*DeShaney*, 489 U.S. at 199-200 (citation omitted). The state's affirmative act of restraining a person's freedom to act on his own behalf triggers substantive due process protections with respect to "incarcerated prisoners, those involuntarily committed to mental institutions, foster children, pre-trial detainees, and those under other similar restraint of personal liberty." *Jackson*, 429 F.3d at 590.

This exception does not appear to the Court to be applicable to the facts alleged in this case, and Plaintiff has offered nothing to convince it to the contrary. The clear gravamen of the instant matter is excessive force. "[I]f the plaintiff was a free person, and the use of force occurred in the course of an arrest or other seizure, then the plaintiff's claim arises under the Fourth Amendment and its reasonableness standard." *Lanman v. Hinson*, 529 F.3d 673, 680 (6th Cir. 2008). In so finding, the *Lanman* court observed that "this is seen most clearly in the law enforcement setting of arrests or investigatory stops[.]" *Id.* Accordingly, the true vehicle for this claim is the Fourth Amendment, which holds law enforcement officers accountable for injuries sustained as a result of a direct encounter between them and private citizens. *See Lane v. Pulaski Cty., Ky.*, Civ. No. 12-62-GFVT, 2014 WL 996293, at *9 (E.D. Ky. Mar. 13, 2014) (in case involving the fatal shooting of the plaintiff's decedent by police during a domestic violence call, court dismissed Fourteenth Amendment substantive due process claim, describing plaintiff's

claim as "trying to place a square peg in a round hole").  Accordingly, Defendant's motion for summary judgment on this issue is GRANTED, and the Fourteenth Amendment claim is DISMISSED.

## C. STATE LAW CLAIMS

Plaintiff also alleges the Tennessee common law claims of assault and battery against Defendant.  These allegations would typically confer supplemental jurisdiction in this Court, as it arises out of the same set of facts as Plaintiff's § 1983 claims.  *See* 28 U.S.C. § 1367(a). However, "district courts have 'broad discretion in deciding whether to exercise supplement jurisdiction over state law claims,'" even if jurisdiction would otherwise be proper pursuant to § 1367(a).  *See Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196 F.3d 617, 620 (6th Cir. 1999) (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996)); *Alexander v. Byrd*, No. 14-1022, 2014 WL 5449626, at *8 (W.D. Tenn. Oct. 24, 2014).  Under § 1367(c), a district court may decline to exercise supplemental jurisdiction if:

> (1)  the claim raises a novel or complex issue of State law,
>
> (2)  the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3)  the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4)  in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Neither party addressed the issue of whether this Court should exercise supplemental jurisdiction over the state law claim.  The Court will nevertheless examine the jurisdictional basis, as "district courts are obligated to *sua sponte* consider whether they have

subject-matter jurisdiction." *Spencer v. Stork*, 513 F. App'x 557, 558 (6th Cir. 2013); *see Alexander*, 2014 WL 5449626, at *10.

Section 1367(c)(4), which permits declining jurisdiction in "exceptional circumstances," applies to Plaintiff's state claim of assault and battery. Courts and commentators have recognized that "[t]he potential for jury confusion can be a sufficiently compelling reason for declining jurisdiction" under § 1367(c)(4). *Alexander*, 2014 WL 5449626, at *10 (quoting *Padilla v. City of Saginaw*, 867 F. Supp. 1309, 1315 (E. D. Mich. 1994)); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966) (noting, before the enactment of § 1367, that the "likelihood of jury confusion in treating divergent legal theories of relief [may] justify separating state and federal claims for trial," in which case "jurisdiction should ordinarily be refused"); 13D Charles Alan Wright, et al., *Federal Practice & Procedure: Jurisdiction* § 3567.3 (3d ed. 2014) ("The possibility of jury confusion might constitute an exceptional circumstance that could present a compelling reason for declining supplemental jurisdiction."). Where "the advantages to be gained by trying . . . claims together are outweighed by the potential for confusion of the issues by the jury," it is judicious for a district court to decline exercising supplemental jurisdiction. *Alexander*, 2014 WL 5449626, at *10 (quoting *Padilla*, 867 F. Supp. at 1316-17).

In *Alexander*, the district court declined to exercise supplemental jurisdiction under § 1367(c)(4) where there were concerns of "different standards for . . . liability in the state and federal claims [that] would likely mislead a jury." *Alexander*, 2014 WL 5449626, at *11. The court reasoned that "[t]rying the supplemental claims along with the federal claims . . . would run a heightened risk that the jury would apply an incorrect legal standard to some causes of action."

*Id.*  This kind of error becomes more probable when a jury is asked to make both objective and subjective inquiries.  *See Padilla*, 867 F. Supp. at 1316 ("[T]he standard for the § 1983 suit is objective reasonableness, while the standard for the state assault and battery claim is subjective reasonableness.  A jury could not be expected to understand and to apply the two different standards of reasonableness in the same case.").

In this case, as in *Alexander*, the circumstances present a scenario where, when taken as a whole, jury confusion is particularly likely.  The jury would be confronted with being asked to make objective inquiries in the federal § 1983 claims and subjective inquiries in the state assault and battery claims.  As jury confusion is "particularly likely" in a scenario such as this and "error becomes more probable," the Court will decline to exercise its supplemental jurisdiction over Plaintiff's state law claim.  *See id.*  Accordingly, the state assault and battery claims are DISMISSED without prejudice.

## IV. CONCLUSION

For the reasons set forth herein, Defendant's motion for summary judgment (D.E. 15) is DENIED in part and GRANTED in part.  Claims under the Fourteenth Amendment are DISMISSED and those pursuant to Tennessee state law are DISMISSED without prejudice. Defendant's motion to dismiss the Plaintiff's Fourth Amendment claims is DENIED.


IT IS SO ORDERED this 25th day of January 2016.


s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE