IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

**DENNIS JONES,**

    **Plaintiff,**

**v.**                                                                                                 **No. 15-1142**

**RICKY MONTGOMERY,**

    **Defendant.**

---

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Before the Court is a motion for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, filed by Defendant, Lexington Police Department Officer Ricky Montgomery. (Docket Entry ("D.E.") 36.) Defendant seeks summary judgment on three claims of excessive force brought against him by Plaintiff, Dennis Jones, pursuant to 42 U.S.C. § 1983. (*Id.*) This is Defendant's second motion for summary judgment; the first motion was granted in part and denied in part on January 25, 2016. (D.E. 31.)[1] Plaintiff has responded to the instant motion, (D.E. 39), and it is now ripe for disposition.

---

[1] In Montgomery's first motion for summary judgment, he raised the defense of qualified immunity. (D.E. 15.) At the time, the parties disputed the underlying facts; thus, the Court determined qualified immunity was not appropriate for Plaintiff's § 1983 claims brought under the Fourth Amendment. (D.E. 31.) However, the Court did grant summary judgment on Plaintiff's Fourteenth Amendment and state law claims. (*Id.*)

I. PROCEDURAL BACKGROUND

Before reaching the substantive issues presented, the Court is compelled to address the tardiness of Jones's response to Montgomery's motion for summary judgment. On August 5, 2016, this Court issued an order directing Plaintiff to show cause within eleven days why the case should not be dismissed for his failure to respond to the June 29, 2016 motion for summary judgment. (D.E. 37.) Plaintiff responded on August 15, 2016, by filing a declaration with the Court wherein he provided a host of reasons for missing the deadline. These excuses included representations that counsel "was aware that the Defendant filed a second Motion for Summary Judgment but [he] was in the middle of a two-week trial," that he is "a [one]-person law firm and was literally working [eighteen] hours a day during [his] trial for [ten] straight days," and that he did not receive an electronic notification that the motion had been filed until July 6, 2016. (D.E. 38 at PageID 319-20.) He further averred that, because he did not receive notification until July 6, he believed Defendant had missed the June 29 deadline for filing dispositive motions, and he "wrongfully assumed" the Court would not consider what he believed was a late-filed motion.[2] Additionally, according to counsel, due to technical difficulties, he was unable to open the electronic notification, and he could not contact technical support because he "was in trial all day long." (*Id.* at PageID 319.)

Defendant responded and produced evidence that contradicted these assertions. (D.E. 40.) Montgomery's attorney obtained records from Shelby County, Tennessee Circuit Court, where counsel claimed he had a trial during the relevant time period. (D.E. 40-1.) Those records show that Plaintiff's counsel, who claimed to be "in the middle of a two-week trial," was in court

---

[2] This assumption is curious given that the Court has, in this case, accepted a previous late-filed response from Plaintiff. Engaging in guesswork about how the Court will act is fraught with peril and not an adequate excuse for failing to meet obligations. *See Rice v. Consol. Rail Corp.*, 67 F.3d 300, slip op. at 4-5 (6th Cir. 1995) (unpublished table decision).

for that case for only two days—on June 29, 2016, and July 11, 2016, when a settlement was announced to the court. (*Id.* at PageID 387.) Defense counsel also submitted a copy of an email that he sent directly to Plaintiff's counsel on June 29 informing him that the second motion for summary judgment had been filed. (*Id.* at PageID 346.) In fact, according to Montgomery, the reason he sent this email "was to avoid a repeat of the earlier problem where [Plaintiff's counsel] claimed he overlooked the [electronic notification]."[3]

Plaintiff's counsel responded with a second declaration and clarified that his "two-week trial which began on June 29" actually settled "during trial" but that he "spent a considerable amount of time" finalizing the settlement during the next week. (D.E. 43 at PageID 430.) He further stated that he had another two-week trial scheduled to begin July 19, which was rescheduled at the last minute to start in mid-August. (*Id.* at PageID 430-31.) Counsel insisted that his "absolute belief was that [he] was in the middle of a two-week trial that did begin on June 29 and had another trial set to begin on July 17 [sic]." (*Id.* at PageID 431.) Counsel repeated his claim that he thought Montgomery's second motion for summary judgment was filed after the deadline, which he apparently believed negated his obligation to respond. (*Id.* at PageID 423.)

In light of the above, Defendant has requested that the Court dismiss this case in its entirety for failure to prosecute. (D.E. 40 at PageID 340.) Alternatively, he urges that the inexcusably late-filed response should be stricken from the record. (*Id.*)

---

[3] Plaintiff also failed to timely reply to Defendant's first motion for summary judgment, and he provided as an excuse that he had "overlooked" the electronic notification showing that the motion had been filed. (D.E. 21-1.) In that circumstance, the Court did consider the late-filed response, but admonished Plaintiff's counsel about the possible consequences of future untimely filings. (D.E. 31 at PageID 152, n.1.)

Federal Rule of Civil Procedure 6(b)(1) provides that

> [w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time: (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

Plaintiff made no request for an enlargement of time to respond to the motion for summary judgment prior to the date it was due. However, he requested the Court accept a late-filed response when he responded to the show cause order. (D.E. 38.) A court may accept a filing after the relevant deadline has passed "where the failure to file before the deadline was the result of excusable neglect." *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006). The term "'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept'" and the determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392, 395 (1993) (internal footnote omitted).

Excusable-neglect determinations require a balancing of five principal factors:

> (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith.

*Nafziger*, 467 F.3d at 522. The burden of showing that a failure to act was the result of excusable neglect is borne by Jones. *See D.B. v. Lafon*, No. 3:06-CV-75, 2007 WL 896135, at *2 (E.D. Tenn. Mar. 22, 2007).

In this case, Plaintiff proffers no argument which would support a finding of excusable neglect. In reviewing the pleadings, the Court concludes that none of the factors favor Jones. The two-week delay in this case is significant because the trial is set for October 31, 2016. Because of Jones's tardiness, Defendant did not file a reply to Plaintiff's response until August

4

29, 2016. Additionally, the delay was entirely within Jones's control and the reason for it not one to which the Court is inclined to turn a blind eye. *See Morgan v. Gandalf, Ltd.*, 165 F. App'x 425, 429 (6th Cir. 2006) (noting the reason for delay factor "has the greatest import and is always critical to the inquiry") (citing *Graphic Comm. Int'l Union v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001)). Indeed, the "failure to respond to a motion for summary judgment or to request an extension of time to file a response thereto is inexcusable neglect." *See B & D Partners v. Pastis*, No. 05-5954, 2006 WL 1307480, at *2 (6th Cir. May 9, 2006) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 175 (6th Cir. 1984)). Also, the excuses proffered by Plaintiff's counsel have previously been found wanting. *See Wilkerson v. Jones*, 211 F. Supp. 2d 856, 859 (E.D. Mich. 2002) ("A lawyer's busy workload is entitled to very little weight under Rule [6(b)]."). As to the prejudice factor, Defendant avers that he has invested time and resources into fact-checking and responding to counsel's statements in his declarations. (D.E. 40-1.)

Moreover, the Court questions the integrity of the declarations filed by Plaintiff's counsel in response to the order to show cause. Montgomery provided evidence that counsel was not in court at the times he claimed in his initial declaration. Indeed, he admitted as much in his second declaration wherein he attempted to explain away the inconsistencies between his two declarations. All this accomplished was to make apparent that his initial declaration contained gross misrepresentations. Counsel's conduct is deeply troubling. Not only does the Court have grave concerns about the truthfulness of counsel's assertions, but this is not the first time counsel has failed to meet deadlines in this case. Plaintiff's counsel was previously ordered to show cause why the case should not be dismissed following his failure to respond to Defendant's *first* motion for summary judgment. (D.E. 20.) At that time, he was warned that the Court would not

tolerate other unexcused failures to meet deadlines. (D.E. 31 at PageID 152, n.1.) Consequently, beyond being inexcusable, counsel's behavior in this regard is ethically-suspect.

Montgomery urges that counsel's actions warrant dismissal of the case or, alternatively, that the Court should disregard the late-filed response. Although dismissal is appropriate under these circumstances, the Court concludes that the best course is to address the substance of Plaintiff's claims, so as not to prejudice him for counsel's failings. However, because counsel has not shown cause why he failed to timely respond, the late response is STRICKEN and will not be considered by the Court in resolving this matter. While it may seem a harsh sanction with respect to Jones, as the Sixth Circuit has recognized, "clients must be held accountable for the acts and omissions of their chosen counsel." *Nafziger*, 467 F.3d at 524 (quoting *Pioneer Inv. Servs. Co.*, 507 U.S. at 396-97 (internal quotation marks omitted).

Additionally, based on the Court's finding that counsel's excuses for late-filing the response were not valid, the Defendant is DIRECTED to submit a statement of fees and expenses, within eleven days, that he incurred in connection with the time spent rebutting Jones's attorney's assertions that he was in trial and did not know that a second motion for summary judgment had been filed.

## II. FACTUAL BACKGROUND

For purposes of this motion, the parties do not dispute the following facts. On June 4, 2014, Montgomery, along with Henderson County Sheriff's Department Investigator Stephen Clark, went to Jones's home to arrest him. (D.E. 36-2.) Montgomery and Clark knocked on Plaintiff's door, and when he answered, they informed him he was under arrest. (*Id.*) Plaintiff was given a copy of the indictments, which contained details of the charges against him. (*Id.*) Jones asked Clark if he could smoke a cigarette while he read the paperwork, and Clark gave him

permission to do so. (D.E. 21-2.) While Plaintiff was reviewing the indictments, Montgomery "slapped the cigarette from [his] hand and pushed him violently against [his] mobile home." (*Id.*) Jones requested that he not be handcuffed too tightly, explaining that he recently had "fusion surgery" on his right wrist. (*Id.*) Defendant told Jones he "didn't give a damn" about his wrist and handcuffed him "tightly" behind his back. (*Id.*) According to Plaintiff, the "handcuffs were so tight that they prevented any movement of the wrist," causing him "an extreme amount of pain." (*Id.*)

Jones was handcuffed for approximately seven to eight minutes while awaiting transport to jail and requested the handcuffs be loosened, to no avail. (D.E. 36-3 at PageID 239.) Officer Tracy Taylor then arrived to take Plaintiff to jail. (D.E. 21-2.) Taylor asked Jones if he was all right, and he informed the officer that the handcuffs were causing him pain. (*Id.*) Taylor removed the handcuffs and returned them to Montgomery, re-handcuffing Plaintiff at the front of his body "loosely enough that the pain was relieved." (*Id.*)

Jones averred that he was not hostile or threatening at any time during his arrest and that he made no threats or attempts to evade arrest. (*Id.*) Plaintiff alleges that, as a result of the tight handcuffs, he "suffered swelling on the dorsal aspect of [his] wrist and increased pain . . . ." (*Id.*) However, Plaintiff also admitted that while he was in jail, he beat on the door to his cell. (D.E. 22.) Jones does not claim that he suffered any injuries from Montgomery's slapping the cigarette from his hand or pushing him against his home in the course of handcuffing him. (D.E. 36-3 at PageID 266.)

Dr. David Yakin, Jones's treating orthopedic surgeon, testified in a deposition that he performed fusion surgery on Plaintiff's right wrist on December 27, 2013. (D.E. 36-4 at PageID 290.) Dr. Yakin testified that Jones presented to his office on August 12, 2014, complaining of

7

wrist pain. (*Id.* at PageID 293.) Plaintiff reported that he "felt like he was making progress" until he was handcuffed, complaining of increased pain since that time. (*Id.*) Upon examination, the doctor noted swelling on the dorsal aspect of Jones's wrist along with decreased motion in his index finger since his most recent visit, which was on May 8, 2014. (*Id.* at PageID 292, 294.) Dr. Yakin opined that, assuming Jones's allegations were true, these injuries were "likely related to the handcuffing . . . ." (*Id.* at PageID 297.)

On cross-examination, Defendant's counsel asked Dr. Yakin whether banging on a jail cell door could cause the loss of motion to his finger and swelling in his wrist. (*Id.* at PageID 301.) Dr. Yakin confirmed that this could have caused Jones's injuries. (*Id.*) Dr. Yakin also agreed that Jones only mentioned tight handcuffing when he complained of injuries relating to his arrest and did not mention his beating on the cell door. (*Id.* at PageID 301.)

On June 4, 2015, Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, alleging three instances of excessive force stemming from his arrest in violation of the Fourth Amendment of the United States Constitution. Specifically, he contends that Montgomery violated his rights by (1) slapping a cigarette from his hand before handcuffing him; (2) "violently" pushing him against his home while handcuffing him; and (3) handcuffing him too tightly. We address each allegation of excessive force in turn.

III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013) (quoting *Ford*

8

*v. Gen. Motors Corp.*, 305 F.3d 545, 551 (6th Cir. 2002)). A court's function at the summary judgment stage is not to "weigh the evidence and determine the truth of the matter"; rather, it is "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 748 (6th Cir. 2012) ("Credibility determinations . . . and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (quoting *Anderson*, 477 U.S. at 255)).

The moving party "has the initial burden of showing the absence of a genuine dispute as to a material fact." *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 520 (6th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the motion is properly supported, "the opposing party must go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008). A court must grant summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). Finally, although a court does not weigh the evidence at this stage, it "must view all evidence and draw any reasonable inferences therefrom in favor of the nonmoving party." *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 426 (6th Cir. 2014) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "If . . . the defendant disputes the plaintiff's version of the story, the defendant must nonetheless be willing to concede the most favorable view of the facts to the plaintiff . . . ." *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009); (quoting *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998)).

## IV. SECTION 1983 & QUALIFIED IMMUNITY

Section 1983 provides a private right of action against any person who subjects "any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights [or] privileges . . . secured by the Constitution and laws[.]"  42 U.S.C. § 1983; *Rehberg v. Paulk*, 132 S. Ct. 1497, 1501 (2012). The statute "creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)). A plaintiff suing under the statute must demonstrate the denial of a constitutional right caused by a defendant acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

In addition to moving for summary judgment, Defendant invoked the defense of qualified immunity. Qualified immunity shields individual government officials "performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Feathers v. Aey*, 319 F.3d 843, 847 (6th Cir. 2003)); *see also Essex v. Cnty. of Livingston*, 518 F. App'x 351, 356 (6th Cir. 2013). Qualified immunity is a defense both to liability and to the suit itself, *Jones v. Sandusky Cnty., Ohio*, 541 F. App'x 653, 660 (6th Cir. 2013), and offers "an entitlement not to stand trial or face the other burdens of litigation," *Morrison*, 583 F.3d at 400 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The doctrine "seeks to prevent government officials, such as police officers, from being held liable for reasonable mistakes, including mistakes of law, fact, or mixed questions of law and fact." *Jones*, 541 F. App'x at 660.

Qualified immunity is determined by examining whether an officer's "actions are 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 395-96 (1989); *see also Griffith v. Coburn*, 473 F.3d 650, 656 (6th Cir. 2007). Furthermore, "[a] defendant enjoys qualified immunity on summary judgment unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Morrison*, 583 F.3d at 400; *see also Saucier v. Katz*, 533 U.S. 194, 202 (2001); *Benison v. Ross*, 765 F.3d 649, 664 (6th Cir. 2014), *reh'g & suggestion for reh'g en banc denied*, 771 F.3d 331 (6th Cir. 2014). Courts may undertake this two-pronged analysis in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

How a right is defined assumes utmost importance. A right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Morrison*, 583 F.3d at 400 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Anderson*, 483 U.S. at 640. The United States Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Instead, "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id.* (Emphasis added.) Moreover, the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *Saucier*, 533 U.S. at 201) (internal quotation marks omitted). This requirement "balances [] the need to hold public officials

11

accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (quoting *Pearson*, 555 U.S. at 231). "The issue of whether qualified immunity is applicable to an official's actions is a question of law. However, where the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004) (citations and internal quotation marks omitted).

Plaintiff's allegation of excessive force during his arrest invokes the Fourth Amendment's protection against unreasonable seizure. *See Graham*, 490 U.S. at 394. The Sixth Circuit has stated,

> Whether an officer has exerted excessive force during the course of seizure is determined under an "objective reasonableness" standard. This entails "balanc[ing] the consequences to the individual against the government's interests in effecting the seizure." The assessment involves a fact-specific inquiry based on the totality of the circumstances that "pay[s] particular attention to 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" The Court should judge the lawfulness of the conduct from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

*Morrison*, 583 F.3d at 401 (citations omitted) (quoting *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002); *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001).

V. ANALYSIS

A. Slapping

First, Montgomery asserts that he is entitled to qualified immunity on Plaintiff's claim that slapping a cigarette out of his hand was excessive force. Defendant avers that slapping a cigarette out of a person's hand prior to handcuffing is not a clearly established violation of a constitutional right.

It is a § 1983 plaintiff's "burden to convince the court that the law was clearly established at the time of the offensive conduct." *Hughes v. City of North Olmsted*, 93 F.3d 238, 241 (6th Cir. 1996) (citing *Daugherty v. Campbell*, 935 F.2d 780, 783 (6th Cir. 1991)). This requires more than identifying a clearly established right "in the abstract," rather, he must demonstrate "a substantial correspondence between the conduct in question and prior law allegedly establishing that defendant's actions were clearly prohibited." *Id.* (citing *Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir. 1990)).

The Sixth Circuit has held that, in many instances, slapping can be a gratuitous use of force. *See, e.g.*, *Lucier v. City of Ecorse*, 601 F. App'x 372, 379 (6th Cir. 2015); *Pigram ex rel. Pigram v. Chaudoin*, 199 F. App'x 509, 513 (6th Cir. 2006). However, although a generalized right to be free from slapping is clearly established, the Supreme Court requires this Court to delve into a more particularized inquiry. *See Saucier*, 533 U.S. at 202. Surviving a qualified immunity defense does not require "'a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Mullenix*, 136 S. Ct. at 308 (quoting *al-Kidd*, 563 U.S. at 741). Thus, the question to be considered in this case is whether it was clearly established in June 2014 that slapping a cigarette out of an arrestee's hand prior to handcuffing amounted to excessive force in violation of the Fourth Amendment.

Obviously, because Plaintiff's response to the motion for summary judgment was stricken, he has not pointed to any case law establishing that a pre-arrest slap to a person's hand is excessive force, and the Court has located no such case upon its own inquiry. A post-handcuffing slap to a person's face is markedly different than slapping an item out of an arrestee's hand prior to placing handcuffs. As the Sixth Circuit has noted, "a slap to the face of a handcuffed suspect—even a verbally unruly suspect—is not a reasonable means of achieving

13

anything more than perhaps further antagonizing or humiliating the suspect." *Pigram*, 199 F. App'x at 513. However, in the present case, Montgomery knocked the cigarette out of Plaintiff's hand in the course of arresting him, just prior to placing him in handcuffs. "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix*, 136 S. Ct. at 308 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The dearth of case law dealing with a factual scenario analogous to the instant case compels a conclusion that Defendant's actions are covered by qualified immunity. In other words, a reasonable officer in Montgomery's position would not know that slapping a cigarette out of an arrestee's hand prior to handcuffing constituted excessive force. Accordingly, qualified immunity is GRANTED on this claim.

B. Pushing

Next, the Court addresses Jones's allegation that Montgomery "violently" pushed him against his home while effecting his arrest. Defendant asserts this claim must fail because Plaintiff has failed to allege even a *de minimis* physical injury. He also points out that when Jones was deposed, he omitted the word violently from his description of the push, and Montgomery argues that this testimony should control when analyzing Plaintiff's claim. Alternatively, Defendant avers that he is entitled to qualified immunity because Jones did not establish that the push was unnecessary, arguing that it was merely "one step in [the officer's] arrest of Jones."

Pushing a suspect against a wall or other object has been held to be an established example of excessive force. Although "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment," *Alkhateeb v. Charter Twp. of Waterford*, 190 F. App'x 443, 449 (6th Cir. 2006) (quoting *Graham*, 490 U.S. at

14

396), courts inquire into the specific facts of the case and determine whether the push was reasonable within the context. "The question whether force is excessive turns on the objective reasonableness of the officer's conduct under the circumstances." *Miller v. Sanilac County*, 606 F.3d 240 (6th Cir. 2010) (citing *Graham*, 490 U.S. at 397). Particularly, when a suspect is fleeing or resisting arrest, courts have upheld the rights of officers to detain such a suspect with physical force. *See Goodrich v. Everett*, 193 F. App'x 551, 557 (6th Cir. 2006) (holding that the physical tackling of plaintiff, a suspected violent criminal, in order to prevent escape is not an excessive use of force).

However, violently shoving a defendant against a wall or other such structure while arresting him has consistently been held by the Sixth Circuit to be an unlawful use of force, absent circumstances such as flight, general unruliness, or danger on the part of the arrestee. *See, e.g.*, *Carpenter v. Bowling*, 276 F. App'x 423, 426-28 (6th Cir. 2008) (denying qualified immunity for officer who threw suspect against van despite fact that suspect did not resist arrest); *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 175 (6th Cir. 2004) (denying qualified immunity for officers who threw Plaintiff against a wall and knocked her face into a display case while arresting her); *Burden v. Carroll*, 108 F. App'x 291, 293-94 (6th Cir. 2004) (denying qualified immunity for officer who pushed belligerent suspect against brick wall after suspect had reportedly threatened someone); *Lockett v. Donnellon*, 38 F. App'x 289, 291-92 (6th Cir. 2002) (finding no excessive force when officers pushed and pulled plaintiff into police car in a rough manner where suspect was uncooperative and verbally abusive).

And, although Montgomery argues that Plaintiff's failure to allege an injury is fatal to his claim, the Sixth Circuit has repeatedly held that

> while an excessive force claim may be established through evidence of severe injury or physical contact, this Circuit has not required that this must be the case.

15

> Rather, we have held that a plaintiff may allege use of excessive force even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage.

*Morrison*, 583 F.3d at 407.

The Sixth Circuit previously denied summary judgment and qualified immunity when faced with a factual scenario analogous to the instant case. *Miller*, 606 F.3d 240. In *Miller*, following a traffic stop, the defendant-officer arrested the plaintiff for reckless driving. *Id.* at 245-46. Plaintiff alleged that the officer effected the arrest "by spinning him around, kicking his feet apart, and slamming him against his vehicle." *Id.* at 246. Miller admitted that he was not "hurt" by these actions. *Id.* at 252. However, the plaintiff's crime was not severe, he posed no threat to officer safety, and he did not resist or attempt to evade arrest. *Id.* at 253. In short, the *Graham* factors weighed against the use of *any* force to effect Miller's arrest.

The *Miller* court acknowledged that the "claim of excessive force . . . [came] close to the 'scintilla of evidence' of excessive force th[e] Court ha[d] previously found to be insufficient to survive summary judgment." *Miller*, 606 F.3d at 254 (citing *Goodrich*, 193 F. App'x at 557; and *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 773-74 (6th Cir. 2004)). Nevertheless, the court ultimately reversed the district court's grant of summary judgment, holding that "a jury could reasonably find that slamming an arrestee into a vehicle constitutes excessive force" when the *Graham* factors all weighed in favor of the plaintiff. *Id.* at 254-55 (citing *Graham*, 490 U.S. at 396). Similarly, the Court held that qualified immunity was not appropriate because, given "the precedent in [the Sixth] Circuit, a jury could reasonably find that the officer's alleged [slamming of plaintiff into a vehicle] violated [his] rights." *Id.*

Likewise, in the present case, Plaintiff's claim that Montgomery "violently" pushed him against his home in the course of handcuffing him comes close to a scintilla of evidence that

16

excessive force was used. However, like the plaintiff in *Miller*, Jones was under arrest for a non-violent offense, he posed no safety threat to the officers, and he made no attempt to escape or resist arrest. While Defendant suggests that Jones's deposition testimony, which did not include the word "violently," should control our analysis, there is other evidence in the record that the alleged push was violent. As part of his response to Montgomery's first motion for summary judgment, Plaintiff filed a declaration from an alleged eyewitness, Stephen Justice, who stated that he "observed . . . Montgomery . . . push [Jones] violently against his mobile home." (D.E. 27.) Consequently, a jury could reasonably conclude that the push was violent and constituted excessive force in violation of his constitutional rights. Therefore, summary judgment and qualified immunity are DENIED with respect to this claim.

C. Handcuffs

Finally, Defendant contends that Jones's claim with respect to applying handcuffs too tightly must fail because he cannot prove that his wrist injuries resulted from handcuffing. Montgomery points to Dr. Yakin's deposition testimony that the injuries could have been caused by either the handcuffing of the Plaintiff's beating on the cell door.

Like slapping and pushing, tight handcuffing may constitute excessive force in certain situations. In *Burchett v. Kiefer*, the Sixth Circuit stated,

> The tightness of the handcuffs themselves causes greater concern. The right to be free from excessively forceful handcuffing is a clearly established right for qualified immunity purposes, and applying handcuffs [too] tightly . . . raises concerns of excessive force. Our precedents allow the plaintiff to get to a jury upon a showing that officers handcuffed the plaintiff excessively and unnecessarily tightly and ignored the plaintiff's pleas that the handcuffs were too tight.

310 F.3d at 944-45 (citations omitted) (quoting *Kostrzewa*, 247 F.3d at 641) (citing *Martin v. Heideman*, 106 F.3d 1308, 1310, 1313 (6th Cir. 1997)); *see also Meadows v. Thomas*, 117 F.

17

App'x 397, 404 (6th Cir. 2004). To establish a viable Fourth Amendment claim for excessively forceful handcuffing, a plaintiff must establish that: (1) he complained to the officer that the handcuffs were too tight; (2) the officer ignored those complaints; (3) and he incurred physical injury as a result of the handcuffing. *Morrison*, 583 F.3d at 401 (citing *Lyons v. City of Xenia*, 417 F.3d 565, 575-76 (6th Cir. 2005)).

In the present case, assuming Jones's account of his arrest is true, he has presented evidence that he complained to the arresting officers that his handcuffs were too tight and that his complaints were ignored. He has also alleged resulting injuries: loss of motion in his right index finger and swelling in his wrist. In support of his claim of injury, Plaintiff deposed his treating physician, Dr. Yakin, who opined on direct examination that, assuming Jones's allegations about the tight handcuffs were true, his injuries were consistent with that story. However, on cross-examination, Montgomery's attorney asked Dr. Yakin whether beating on a jail cell door could also be responsible for the types of injuries Jones suffered. Dr. Yakin answered in the affirmative.

"Traditional tort concepts of causation inform the causation inquiry on a § 1983 claim." *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007) (citing *McKinley v. City of Mansfield*, 404 F.3d 418, 438 (6th Cir. 1997). Thus, a plaintiff carries the burden of proving that the offending officer's conduct was the cause in fact of his injury. *Id.* To prove that an officer was the "cause in fact" of his injury, a plaintiff must show that "the result would not have occurred but for the conduct. Similarly, if the result would have occurred without the conduct complained of, such conduct cannot be a cause in fact of that particular result." *Id.* (citing *Butler v. Dowd*, 979 F.2d 661, 669 (8th Cir. 1992)).

18

Despite Dr. Yakin's testimony about the source of injury, Jones provides no evidence tending to show that his wrist injury was likely caused by the handcuffing rather than his beating on the cell door.  Consequently, Plaintiff cannot show that application of tight handcuffs caused his injuries.  No reasonable juror could conclude, by a preponderance of the evidence, that the handcuffing caused Jones's injuries rather than his beating on the bars of his door in jail.  For this reason, Defendant's motion for summary judgment on this issue is GRANTED.

## VI.  CONCLUSION

Based on the foregoing, Montgomery's motion for summary judgment (D.E. 36) is GRANTED in part and DENIED in part.

IT IS SO ORDERED this 13th day of October 2016.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE